STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

NO. 2023 CA 1328

MICHELE DICKSON-BRUNO

VERSUS

MANDEVILLE MARKETPLACE INVESTORS NO, LLC,
DNA UNDERGROUND, LLC, CITY OF MANDEVILLE,
VICTORY REAL ESTATE INVESTMENTS LA, LLC,
F/K/A VICTORY REAL ESTATE INVESTMENTS, LLC

Judgment Rendered: **DEC 27 2024**

* * * * *

On Appeal from the
22nd Judicial District Court
Parish of St. Tammany, State of Louisiana
Trial Court No. 2020-14993

The Honorable August J. Hand, Judge Presiding

* * * * *

Matthew D. Hemmer
New Orleans, Louisiana

Attorney for Plaintiff-Appellant,
Michelle Dickson-Bruno (deceased)
and Kristina Sleik (substituted)

Christopher Moody
Albert D. Giraud
Hammond, Louisiana

Attorneys for Defendant-Appellee,
City of Mandeville

Keith J. Bergeron
Juan J. Miranda
New Orleans, Louisiana

Attorneys for Defendants-Appellees,
G.E.C., Inc. and Lexington Ins. Co.

Dan Richard Dorsey
Elizabeth L. Huval
Covington, Louisiana

Attorneys for Defendants-Appellees,
DNA Underground, LLC, and United
Fire & Casualty Company

Sean M. Casey
Mandeville, Louisiana

Attorney for Defendants-Appellees,
Mandeville Retail Center, LLC, and
The Travelers Indemnity Co. of America

Wolfe, J. dissents.

Frederick W. Swaim, III
Cody W. Castle
New Orleans, Louisiana

Attorneys for Defendants-Appellees,
Mandeville Marketplace Investors NO,
L.L.C., and Victory Real Estate Investment
LA, L.L.C.

Michael J. Remondet, Jr.
Juliette B. Wade
Lafayette, Louisiana

Attorneys for Defendant-Appellee,
Big Easy Parking Lot Maintenance, LLC

\* \* \* \* \*

BEFORE: WELCH, LANIER, WOLFE, MILLER, AND STROMBERG, JJ.

**STROMBERG, J.**

In this case, the plaintiff was injured after stepping into a sunken water meter box which was located in a walkway at a shopping center in Mandeville, Louisiana. The district court dismissed the personal injury lawsuit on a joint motion for summary judgment filed by all of the defendants. Defendants filed a peremptory exception raising the objection of no cause of action in this court. For the following reasons, we reverse and remand, and we overrule the objection of no right of action.

## BACKGROUND

On a bright and sunny day on May 15, 2020, plaintiff, Michelle Dickson-Bruno[1], arrived at the Mandeville Marketplace shopping center at approximately 11:00 a.m., intending to go to a cellphone repair shop located there. Michelle's husband, Joseph Bruno, had driven and parked near the front of the store to allow Michelle to exit the car and proceed to the store while he waited in the car. Michelle had been to the cellphone repair shop several times before without incident. A brick pillar was located directly in front of the car, blocking the view of both the store and walkway. Michelle "jumped out" of the car and "grabbed" the pillar to help her step up from the parking lot onto the walkway. As Michelle rounded the pillar, she admittedly was looking toward the line of people waiting both inside and outside of the store and not at the walkway. Michelle had taken one step toward the store when her right foot immediately fell directly into a water meter box that had sunk approximately ten inches below the surface of the concrete walkway. Michelle tripped and fell, sustaining personal injuries. Joseph saw Michelle's arm flailing to the left of the brick pillar as she fell. He "jumped" out of the car and hurried to help Michelle, and that is when he saw the hole that caused her to fall. Michelle later

---

[1] In the caption and in the petition, "Michelle" is misspelled as "Michele." Throughout this opinion, we will reference the plaintiff as Michelle.

described the incident as stepping "into air" and a "black hole," not the solid surface she was expecting.

Michelle subsequently filed this personal injury lawsuit, which was amended and supplemented four times, against multiple defendants: (1) Mandeville Marketplace Investors NO, LLC; (2) Victory Real Estate Investments LA, LLC; (3) The City of Mandeville; (4) DNA Underground, LLC; (5) United Fire & Casualty Company; (6) Principal Engineering, Inc.; (7) Mandeville Retail Center, LLC; (8) The Travelers Indemnity Company of America; and (9) Big Easy Parking Lot Maintenance, LLC (collectively referred to as the "defendants"). Michelle alleged that the sunken water meter box was a dangerous tripping hazard. The defendants jointly moved for summary judgment, arguing that the sunken water meter box was open and obvious to any reasonable person who was paying attention to where they were walking.[2] Michelle opposed the motion, contending that the brick pillar obscured her view of the hazardous condition, which was therefore, not open and obvious.[3] On March 2, 2023, the district court heard and granted the defendants' motion for summary judgment, dismissing all of Michelle's claims in a judgment subsequently signed on March 14, 2023. Michelle timely appealed.

---

[2] Attached to the defendants' motion for summary judgment were the following exhibits in support of the motion: (1) Petition for Damages; (2) Excerpts from Michelle's deposition testimony; (3) Excerpts from Joseph's deposition testimony; (4) Excerpts from Principal Engineering Vice President Andre Monnot's deposition testimony; (5) Letter from Andre Monnot to the Director of the City of Mandeville's Department of Public Works concerning the subject water meter, which was attached as an exhibit to Donald Roussell, Jr.'s deposition; and (6) Photographs the defendants allege were produced by Michelle during discovery.

[3] In her opposition Michelle relied on deposition excerpts from the following persons: (1) Bobby Griffin, the DNA Underground, LLC, employee who worked on the subject water meter during the City of Mandeville replacement project; (2) Ronnie Culbreth, who was involved with managing the property for Big Easy Parking Lot Maintenance, LLC, at the Mandeville Marketplace shopping center; (3) Kenny Stokes, an employee for DNA Underground, LLC, who worked on the water meter replacement project for the City of Mandeville; (4) Joseph; (5) Stephen Adams; (6) Clifton Siverd, the engineering assistant for the City of Mandeville's Department of Public Works; (7) Steven Babin, an inspector for Principal Engineering; (8) Andre Monnot, regarding the water meter replacement project; (9) Donald Roussell, Jr., an inspector for Principal Engineering who worked on the City of Mandeville's water meter replacement project; (10) Ashton Dorsey, the property manager for Mandeville Marketplace; and (11) Michelle.

4

## EXCEPTION OF NO RIGHT OF ACTION

During the pendency of this appeal, but before the case was submitted for decision, Michelle passed away on December 9, 2023, under unknown circumstances unrelated to the injuries complained of in this case. On July 15, 2024, counsel for Michelle filed a motion to substitute with this court, seeking to have Michelle's surviving daughter, Kristina Sleik, substituted as the proper party plaintiff to assert her deceased mother's claims, pursuant to La. C.C. art. 2315.1(A)(1).[4] This court signed an order allowing for the substitution on July 18, 2024.

On October 24, 2024, the defendants filed a joint peremptory exception raising the objection of no right of action, averring that at the time of Michelle's death, Michelle had "already been cast in judgment by the [trial] court, which extinguished her right of action and left only the right of appeal." The defendants also stated that they did not have an opportunity to address or argue against the substitution of Michelle's daughter before this court granted the motion to substitute. Michelle's daughter filed an opposition to the defendants' exception on October 29, 2024. The exception of no right of action was referred to the merits.

We first note that we cannot render a judgment for or against a deceased person, as such is an absolute nullity. **Rainey v. Entergy Gulf States, Inc.**, 2001-2414 (La. App. 1 Cir. 6/25/04), 885 So.2d 1193, 1197, writs denied, 2004-1878, 1883, and 1884 (La. 11/15/04), 887 So.2d 478 and 479. However, as an appellate court, we do have the authority to substitute a party when a party dies during the pendency of an appeal, if a motion is properly filed as set forth in the Uniform Rules for the Louisiana Courts of Appeal. See **Horrell v. Alltmont**, 2021-0566 (La. App.

---

[4] Louisiana Civil Code article 2315.1(A)(1) provides: "If a person who has been injured by an offense or quasi offense dies, the right to recover all damages for injury to that person … shall survive for a period of one year from the death of the deceased in favor of … [t]he surviving spouse and child or children of the deceased, or either the spouse or the child or children."

1 Cir. 12/22/21), 340 So.3d 909, 913; see also La. C.C.P. art. 821 ("The substitution of parties in an action pending in the supreme court or in a court of appeal is governed by the rules of the appellate court.").

The Uniform Rules for the Louisiana Courts of Appeal, Rule 2-9, provide that "[t]he rules and procedures for substitution of parties provided by La. [C.C.P.] arts. 801-807 shall regulate the substitution of parties." Louisiana Code of Civil Procedure article 801 provides that "[w]hen a party dies during the pendency of an action which is not extinguished by his death, his legal successor may have himself substituted for the deceased party, on *ex parte* written motion supported by proof of his quality." (Emphasis added.) A "legal successor" incorporates the survivors designated in La. C.C. art. 2315.1(A)(1), which includes the surviving child or children of the deceased. See La. C.C.P. art. 801.

Michelle's death certificate was attached to the plaintiff's motion to substitute and is proof that Michelle's daughter, Kristina, is a legal successor of her deceased mother, Michelle. Based on the timely *ex parte* motion to substitute, along with the attached death certificate, we are satisfied that Kristina is the proper party plaintiff to assert Michelle's claims against the defendants. Thus, we find no merit to the defendants' joint peremptory exception raising the objection of no right of action. We therefore overrule that exception and maintain the appeal.

**MOTION FOR SUMMARY JUDGMENT**

Appellate courts apply a *de novo* standard of review when considering district court rulings on summary judgment motions. **Farrell v. Circle K Stores, Inc.,** 2022-00849 (La. 3/17/23), 359 So.3d 467, 471. Thus, we use the same criteria that govern the district court's consideration of whether summary judgment is appropriate. **Id**. Pursuant to La. C.C.P. art. 966(A)(3),(4)[5], a district court must

---

[5]Louisiana Code of Civil Procedure article 966 was amended by 2023 La. Acts No. 317, § 1 (eff. Aug. 1, 2023) and by 2023 La. Acts No. 368, § 1 (eff. Aug. 1, 2023). However, the defendants' motion for summary judgment was filed, heard, and decided prior to the effective date of the

6

grant a motion for summary judgment if the pleadings, memoranda, affidavits, depositions, answers to interrogatories, certified medical records, written stipulations, and admissions show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. The burden of proof rests with the mover; nevertheless, if the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. La. C.C.P. art. 966(D)(1).

The burden is on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law. La. C.C.P. art. 966(D)(1). When a motion for summary judgment is made and supported as provided in La. C.C.P. art. 967(A), an adverse party may not rest on the mere allegations or denials of her pleading, but her response, by affidavits or as otherwise provided in La. C.C.P. art. 967(A), must set forth specific facts showing that there is a genuine issue for trial. La. C.C.P. art. 967(B). If she does not so respond, summary judgment, if appropriate shall be rendered against her. See **Farrell**, 359 So.3d at 472.

At trial, Michelle would bear the burden of proving the elements of her claims against the defendants. Whether a claim arises in negligence under La. C.C. art. 2315[6] or in premises liability under La. C.C. art. 2317.1,[7] the traditional duty/risk

---

amendment, August 1, 2023. Therefore, we refer to the version of Article 966 in effect prior to the 2023 amendment.

[6] Louisiana Civil Code art. 2315(A) provides: "Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it."

[7] Louisiana Civil Code art. 2317.1 defines the basis for delictual liability for defective things and provides:

analysis is the same. **Farrell**, 359 So.3d at 473. In this case, Michelle's burden is to prove five separate elements: (1) the defendants had a duty to conform their conduct to a specific standard (duty); (2) the defendants' conduct failed to conform to the appropriate standard (breach of duty); (3) the defendants' substandard conduct was a cause-in-fact of Michelle's injuries (causation); (4) the defendants' substandard conduct was a legal cause of Michelle's injuries (the scope of duty); and (5) proof of actual damages (damages). See **Id**. at 473. Additionally, a claim under Article 2317.1 requires proof that the defendant had actual or constructive knowledge of the defect. **Id**.

If Michelle fails to prove any one element by a preponderance of the evidence, the defendants are not liable. See **Farrell**, 359 So.3d at 473. Therefore, for the defendants to prevail on summary judgment, they are required to show an absence of factual support for *any one* of the elements of Michelle's cause of action. The issue presented in the defendants' motion for summary judgment in this case is whether the property had a condition that created an unreasonable risk of harm. Thus, any focus on the defendants' knowledge is misplaced in considering the summary judgment motion.

The Duty Element

The existence of a duty is a question of law. **Farrell**, 359 So.3d at 473. The court's inquiry is whether the plaintiff has any law (statutory, jurisprudential, or arising from general principals of fault) to support the claim that the defendants owed

---

The owner or custodian of a thing is answerable for damage occasioned by its ruin, vice, or defect, only upon a showing that he knew or, in the exercise of reasonable care, should have known of the ruin, vice, or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care. Nothing in this Article shall preclude the court from the application of the doctrine of res ipsa loquitur in an appropriate case.

her a duty. **Id**. In this case, La. C.C. arts. 2315, 2317,[8] and 2317.1 are the statutory sources of law which support Michelle's claim that the defendants owed her a duty. **Id**. The general rule is that the owner or custodian of property has a duty to keep the premises in a reasonably safe condition. The owner or custodian must discover any unreasonably dangerous condition on the premises, and either correct the condition or warn potential victims of its existence. **Id**. at 473-474. We find that the defendants owed such a duty to Michelle.

The Breach of Duty Element

Whether there was a breach of the duty owed is a question of fact or a mixed question of law and fact. **Farrell**, 359 So.3d at 474. To make this determination, courts apply a risk/utility balancing test, that requires consideration of four pertinent factors: (1) the utility of the complained-of condition; (2) the likelihood and magnitude of harm, including the obviousness and apparentness of the condition; (3) the cost of preventing the harm; and, (4) the nature of the plaintiff's activities in terms of social utility or whether the activities were dangerous by nature. **Id**.

The defendants moved for summary judgment solely on the basis that the sunken water meter box was open and obvious and, as such, did not present an unreasonable risk of harm. Their summary judgment motion was filed prior to the Louisiana Supreme Court's decision in **Farrell**. In **Farrell**, the Louisiana Supreme Court clarified that whether a condition is open and obvious is embraced within the breach of duty element of the duty/risk analysis and is not a jurisprudential doctrine barring recovery, but only a factor in the risk/utility balancing test. **Farrell**, 359 So.3d at 478. Thus, after the **Farrell** decision, whether summary judgment is appropriate in this case turns on the second factor in the risk/utility balancing test,

---

[8] Louisiana Civil Code article 2317 states: "We are responsible, not only for the damage occasioned by our own act, but for that which is caused by . . . things which we have in our custody."

9

which is the likelihood and magnitude of harm, including the obviousness and apparentness of the condition. The defendants argue that nothing prevented Michelle from seeing the open and obvious sunken water meter box in the middle of the walkway. Conversely, Michelle maintains that the brick pillar obstructed her view of the sunken water meter box, which was a hazard to anyone walking that particular path to the store.

The likelihood of the harm factor considers the degree to which the condition will likely cause harm. If the condition is likely to cause harm, the weight falls in favor of finding the condition unreasonably dangerous. If the condition is unlikely to cause harm, the weight falls in favor of the condition not being unreasonably dangerous. The magnitude of the harm factor asks whether the condition presents a risk of great or small injury and the likelihood of each. The likelihood and magnitude of the harm includes consideration of the obviousness, openness, and apparentness of the complained-of condition. See **Farrell**, 359 So.3d at 474; **Bartlett v. A-I Service Co. of Houma, LLC**, 2023-1016 (La. App. 1 Cir. 4/17/24), 389 So.3d 158, 165. The more obvious the risk created by a condition, the less likely it is to cause injury because it will be avoided. **Campbell v. Hospital Service District No. 3 for Parish of Lafourche**, 2022-1118 (La. App. 1 Cir. 8/1/23), 371 So.3d 543, 551. For a hazard to be considered open and obvious, it must be one that is open and obvious to all who may encounter it. **Farrell**, 359 So.3d at 478. Thus, the open and obvious concept asks whether the complained-of condition would be apparent to any reasonable person who might encounter it. If so, that reasonable person would avoid it, and the factor will weigh in favor of finding the condition not unreasonably dangerous. Further, the lack of reported complaints or other falls in connection regarding a complained-of condition indicates a low risk of harm. **Campbell**, 371 So.3d at 551. Additionally, whether the plaintiff has knowledge of the condition is irrelevant in determining whether the thing is defective. **Farrell**,

359 So.3d at 478. As applied to this case, we find that Michelle's knowledge and appreciation of the allegedly hazardous condition is not determinative.

It is undisputed that the water meter box in question had sunk approximately ten inches below the level of the concrete walkway. The question is whether the sunken water meter box would be apparent to anyone who might encounter it on the walkway and, if so, would any reasonable person avoid walking the path directly over the water meter box. The water meter box was located in the center of the walkway outside of the cellphone repair shop where Michelle intended to go. Both Michelle and Joseph testified that the brick pillar obstructed her view of the sunken water meter box. To get to the shop, Michelle got out of and walked around the car in the parking lot, then she grabbed the pillar to help her up to the elevated walkway area. She testified that she "turned the pillar with my left foot, I got up," then "immediately" her "right foot went into air," whereupon she "immediately" fell as her right foot went into the sunken water meter box. According to Michelle, "when I turned the corner [of the pillar], as I was looking to see how many people were in front of me or if I had to stay outside and ... mask..., the next second, I was eating cement." She explained by "eating cement," she meant she went facedown and that she "literally fell in the black hole."

When Ashton Dorsey, the property manager for Mandeville Marketplace, was asked if he could agree that "a person who parks in the parking lot intending to go to the cellphone repair store may have [his or her] view of the water meter obstructed by the brick pillar in front of it as [he or she] approach[ed]?", he replied "If they're [sic] coming from that side, I – yes, sir." Mr. Dorsey testified in his deposition, over objections that, if the water meter had recessed into the ground multiple inches as depicted in the photograph he saw, "it could be a tripping hazard." Mr. Dorsey answered affirmatively when asked if the water meter, after being raised to the level of the pavement, again sank down a couple of inches within the span of a few months

indicated some type of ongoing problem with the property. When later asked in his deposition if he could agree that the water meter was a tripping hazard, Mr. Dorsey answered, "I think it's right on the cusp, yeah, I would agree." He further replied "Absolutely" when asked if he would do something about such a water meter box and agreed that it was a safety concern. In his deposition excerpts, Clifton Siverd, the engineering assistant for the City of Mandeville's Department of Public Works, agreed that the recessed water meter box was a dangerous tripping hazard.

The fact that Michelle was not looking at the walkway when she fell is not dispositive as she immediately encountered the sunken water meter box after she went around the pillar, which blocked her view of it. As stated earlier, for a hazard to be considered open and obvious, it must be one that is open and obvious to all who may encounter it. **Farrell**, 359 So.3d at 478. In this case, the sunken water meter box was not an open and obvious hazard to all who encountered it. Any reasonable person approaching the cell phone repair shop from the parking lot where Michelle and her husband had parked would not be aware of the sunken water meter box because the brick pillar obscured the hazard, and that person would not be able to avoid tripping. See **Farrell**, 359 So.3d at 478. Genuine issues of material fact remain as to whether a duty was breached, and thus, summary judgment was not appropriate.[9]

## CONCLUSION

For the reasons set forth, we overrule the defendants/appellees' joint peremptory exception raising the objection of no right of action. We reverse the trial

---

[9] Because the defendants' summary judgment motion was filed and considered before the **Farrell** decision, the defendants only addressed whether the sunken water meter was open and obvious; they did not address the remaining factors in the risk/utility balancing test as required under **Farrell**. 359 So.3d at 467. Given our ruling that genuine issues of fact exist as to the likelihood and magnitude of the harm, including the obviousness and apparentness of the condition, and our reversal of the summary judgment, we pretermit any further discussion of the remaining factors in the risk/utility balancing test. See **Bartlett v. A-I Service Co. of Houma, LLC**, 2023-1016 (La. App. 1 Cir. 4/17/24), 389 So.3d 158, 167 n.8.

court's March 14, 2023 judgment granting the defendants/appellees' joint motion for summary judgment and dismissing all claims of plaintiff/appellant, Michelle Dickson-Bruno, against them. We remand this matter for further proceedings consistent with this opinion. All costs of this appeal are assessed to the defendants/appellees.

**PEREMPTORY EXCEPTION OF NO RIGHT OF ACTION OVERRULED; REVERSED AND REMANDED.**